Todd B. Scherwin (SBN 239848)
E-Mail: tscherwin@fisherphillips.com
Christopher A. Gelpi (SBN 288443)
E-Mail: cgelpi@fisherphillips.com
Taylor R. Platt (SBN 335681)
E-Mail: tplatt@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Attorneys for Defendant
HD SUPPLY MANAGEMENT, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NABOR CERVANTES NIETO,<br><br>Plaintiff,<br><br>v.<br><br>HD SUPPLY MANAGEMENT, INC., a Florida corporation; JESSE QUINTANILLA, an individual; RUBEN DOE, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.:<br><br>*[Removed from Los Angeles Superior Court Case No. 21STCV32877]*<br><br>**DEFENDANT HD SUPPLY MANAGEMENT, INC.'S NOTICE AND PETITION OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(A), 1441, AND 1446**<br><br>*[Filed concurrently with Civil Cover Sheet; Certificate of Interested Parties; Corporate Disclosure Statement; Notice of Related Cases; and Declarations of Christopher A. Gelpi and Dan McDevitt]*<br><br>Complaint Filed: September 7, 2021<br>Trial Date: TBD |

**TO PLAINTIFF, HIS COUNSEL OF RECORD AND TO THE CLERK OF THE COURT FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE THAT Defendant HD SUPPLY MANAGEMENT, INC. ("HD Supply"), by and through its counsel of record, hereby submits this Notice of Removal and Petition to Remove this action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California (Western Division) pursuant to 28 U.S.C. §§ 1332 and 1441(b). The grounds for removal are as follows:

## I.    STATEMENT OF JURISDICTION

1.  This matter is a civil action over which this District Court has original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). This action is one that may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, as set forth below. *See* 28 U.S.C. §§ 1332, 1441(b).

## II.   VENUE

2.  This action was filed in the California Superior Court for the County of Los Angeles. Thus, venue properly lies in the United States District Court for the Central District of California. *See* 28 U.S.C. §§ 84(c), 1391, and 1441.

## III.  PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

3.  On September 7, 2021, Plaintiff Nabor Cervantes Nieto ("Nieto" or "Plaintiff") filed a civil action in the Los Angeles Superior Court entitled *Nabor Cervantes Nieto v. HD Supply Management, Inc., et al.*, Case No. 21STCV32877 ("State Lawsuit"). *See* Declaration of Christopher A. Gelpi ("Gelpi Decl."), ¶ 2, **Exhibit A**.

4.  On September 15, 2021, Nieto served HD Supply with the Civil Case

Sheet, Summons, and Complaint. Gelpi Decl., ¶ 3, **Exhibit B**. The Complaint asserts the following causes of action: (1) Wrongful Termination in Violation of Public Policy; (2) Retaliation in Violation of Gov't Code § 12940, *et seq.*; (3) Retaliation in Violation of Lab. Code § 246.5, *et seq.*; (4) Disability Discrimination; (5) Failure to Prevent Discrimination; (6) Harassment Due to Disability; (7) Hostile Work Environment in Violation of Gov't Code § 12940, *et seq.*; (8) Failure to Accommodate Physical Disability in Violation of Gov't Code § 12940(m); (9) Failure to Engage in a Good Faith Interactive Process in Violation of Gov't Code § 12940(n); (10) Negligent Hiring, Supervision, and Retention; and (11) Refusal to Provide Information in Violation of Labor Code § 1198.5. Gelpi Decl., ¶ 2, **Exhibit A**.

5. Nieto also named Jesse Quintanilla ("Quintanilla") as a co-defendant in the State Lawsuit. Nieto only asserts the sixth cause of action for Harassment against Quintanilla. Gelpi Decl., ¶ 2, **Exhibit A**. Quintanilla has not been served with a copy of the Summons and Complaint. Gelpi Decl., ¶ 5. Quintanilla has not filed any documents in the State Lawsuit. *Id*.

6. Nieto also named Ruben Doe ("Ruben") as a co-defendant in the State Lawsuit. Nieto only asserts the sixth cause of action for Harassment against Ruben. Gelpi Decl., ¶ 2, **Exhibit A**. Ruben has not been served with a copy of the Summons and Complaint. Gelpi Decl., ¶ 5. Ruben has not filed any documents in the State Lawsuit. *Id*.

7. HD Supply filed its answer to the Complaint on October 12, 2021. Gelpi Decl., ¶ 4, **Exhibit C**.

8. As of the date of this Notice of Removal, no other processes, pleadings, and/or orders have been served upon HD Supply in the State Lawsuit. Gelpi Decl., ¶ 7.

9. This Notice of Removal is timely filed because it is filed within thirty days of service of the initial pleading setting forth the claim for relief upon which

the State Lawsuit is based.  *See* 28 U.S.C. § 1446(b)(3); *see also Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (11th Cir. 1999).  In addition, this Notice of Removal has been filed within one year of commencement of the State Lawsuit, as required by 28 U.S.C. § 1446(b).  Therefore, this Notice of Removal has been timely filed.

## IV. GROUNDS FOR REMOVAL

### A. Complete Diversity of Citizenship Exists Between Nieto and HD Supply.

#### 1. *Citizenship of Nieto*

10. For diversity purposes, a person is a "citizen" of the state in which he is domiciled.  28 U.S.C. § 1332 (a)(1); *see also Kanotor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983); *Kramer v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that a person's domicile is the place he resides with the intention to remain).  Residence is *prima facie* evidence of domicile. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013); *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir. 1994); *Marroquin v. Wells Fargo, LLC*, No. 11CV163-L BLM, 2011 WL 476540, at *1 (S.D. Cal. Feb. 3, 2011).  In fact, it is presumed that a natural person's residence is also his or her domicile, and a party resisting this presumption bears the burden of producing contrary evidence.  *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986).

11. In his Complaint, Nieto alleges that he "is and, at all times relevant to the matters alleged [in the Complaint]," has been a resident of the State of California and resides in Los Angeles County, California.  *See* Gelpi Decl., ¶ 2, **Exhibit A**, Compl. ¶ 1.  Nothing in the Complaint or other pleadings state or suggest otherwise.  Accordingly, Nieto is domiciled in and is a citizen of the State of California.

#### 2. *Citizenship of HD Supply*

12. At the time of the filing of this action, HD Supply was and continues

to be a corporation. Declaration of Dan McDevitt ("McDevitt Decl."), ¶ 2.

13. For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The phrase "principal place of business" "refers to the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (U.S. 2010). This is the corporation's "nerve center." *Id.* at 1181. "[I]n practice [this] should normally be the place where the corporation maintains its headquarters." *Id.* at 93. The "nerve center" analysis focuses on the place at which the corporation's executive and administrative functions are conducted. *See Indus. Tectronics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092–93 (9th Cir. 1990); *see also State Farm Fire & Cas. Co. v. Byrd*, 710 F. Supp. 1292, 1293 (N.D. Cal. 1989) (determining "nerve center" by examining, among other factors, where the corporation's headquarters are located and where its principal policy and executive decisions are made).

14. At all times alleged in the State Lawsuit and at the time this Notice of Removal was filed, HD Supply is, and was, a corporation that is incorporated in Florida. *See* McDevitt Decl., ¶ 2. Defendant HD Supply's principal place of business is, and was, located in Georgia as of the date the State Lawsuit and this Notice of Removal were filed. *See id.* Defendant HD Supply controls, directs, and coordinates the company's business activities at its Georgia headquarters. *See id.* Defendant HD Supply's Chief Executive Officer and Chief Financial Officer work in the company's Georgia headquarters. *See id.* Accordingly, Defendant HD Supply is a citizen of the states of Florida and Georgia as it is incorporated in Florida and has its principal place of business in Georgia.

### 3. *Citizenship of Doe Defendants*

15. The Complaint also names as Defendants DOES 1 through 100 ("DOE Defendants"). The one hundred "Doe" Defendants named in the Complaint are not

considered in assessing diversity. *See*, *e.g.*, *Newcombe v. Adolf Coors Co*. 157 F.3d 686, 690-91 (9th Cir. 1998) ("28 U.S.C. §1441(a) explicitly provides that the citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal. As such, the district court was correct in only considering the domicile of the named defendants."). Accordingly, the citizenship of the alleged DOE Defendants does not impact the diversity analysis for removal.

16. Because Plaintiff is a citizen of California and HD Supply is a citizen of Florida and Georgia, complete diversity of citizenship exists in this matter.

**B.    Quintanilla and Ruben Are Fraudulently Joined Defendants Who Must Be Disregarded When Assessing Diversity.**

17. The Complaint alleges that the individual defendants Quintanilla and Ruben are citizens of California and thus, not diverse from the California citizenship of HD Supply. *See* Gelpi Decl., ¶ 2, **Exhibit A,** Compl. ¶ 3-4. However, a non-diverse defendant named in a state court action is disregarded for diversity jurisdiction purposes if the court determines that the defendant's joinder in the litigation is a "sham" or "fraudulent," in that no valid cause of action has been stated against that defendant. *Morris v. Princess Cruises, Inc*., 236 F.3d 1061, 1067 (9th Cir. 2001). "It is commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co*. 139 F.3d 1313, 1318 (9th Cir. 1998). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. General Foods Corp*., 811 F.2d 1336, 1339 (9th Cir. 1987). Where, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff cannot recover against the party whose joinder is questioned, the joinder is considered fraudulent. *Calero v. Unisys Corp*., 271 F.Supp. 2d 1172, 1176 (N.D. Cal. 2003).

18. The sole cause of action asserted against Quintanilla and Ruben is

harassment due to disability. To state a cause of action, a complaint must allege "*enough facts* to state a claim to relief that is *plausible on its face*." *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 570; see also *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 684. To establish a "plausible" claim, the complaint must contain "more than labels and conclusions" or "formulaic recitations of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

19. The Complaint only alleges the following facts related to Quintanilla:
- "In May 2020, Plaintiff was harassed by his supervisor defendant Jesse Quintanilla." Gelpi Decl., ¶ 2, **Exhibit A**, Compl. ¶ 16.
- "He was pressured to keep up the same production level as other employees even though he was injured." Gelpi Decl., ¶ 2, **Exhibit A**, Compl. ¶ 16.
- "Mr. Quintanilla harassed him when he left to go to doctor's appointments." Gelpi Decl., ¶ 2, **Exhibit A**, Compl. ¶ 16.
- "He accused Plaintiff of making up excuses to avoid working." Gelpi Decl., ¶ 2, **Exhibit A**, Compl. ¶ 16.

20. The Complaint only alleges the following facts related to Ruben:
- "Plaintiff was also harassed due to his work restrictions by lead defendant Ruben Doe." Gelpi., ¶ 2, **Exhibit A**, Compl. ¶ 17.
- "After he was placed on light duty, Ruben stared aggressively at Plaintiff." Gelpi., ¶ 2, **Exhibit A**, Compl. ¶ 17.
- "Ruben began micromanaging Plaintiff." Gelpi., ¶ 2, **Exhibit A**, Compl. ¶ 17.

///

21. None of the allegations in the Complaint support a claim for hostile work environment against Quintanilla and/or Ruben. Therefore, Quintanilla and Ruben are sham defendants who must be disregarded for purposes of assessing whether complete diversity of citizenship exists.

22. To prevail on a hostile work environment claim, a plaintiff must prove that he was: (1) "subjected to verbal or physical conduct" of a harassing nature; (2) "the conduct was unwelcome;" and (3) the conduct as sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. *See Manatt v. Bank of America, NA* (9th Cir. 2003) 339 F.3d 792, 798 (citing *Kang v. U. Lim America, Inc*. (9th Cir. 2002) 296 F.3d 810, 817). Courts have ruled that "simple teasing" and "offhand comments," are not actionable. *See Manatt*, *supra*, 339 F.3d at 798. Where, as here, the alleged harassment is based on disability, Plaintiff must establish that he was subjected to offensive comments or other abusive conduct that were clearly based on his disability and were **"sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment and create an abusive work environment*.*"** *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 609 (1989) (emphasis added). Conduct that is "occasional, isolated, sporadic, or trivial" is insufficient. *Id.*

23. In *Manatt*, the court ruled that the plaintiff's allegations that defendant's repeated use of racial epithets, which occurred over a span of **two-and-a-half years**, did not constitute harassment because the conduct, although offensive and inappropriate, was not sufficiently "severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive work environment." *Id*. at 795-98 ("Viewing the evidence in the light most favorable to [plaintiff], we conclude that the conduct of Manatt's co-workers and supervisor—while offensive and inappropriate—did not so pollute the workplace that it altered the conditions of her employment. Her hostile work environment discrimination claim must therefore fail.") (*citing Vasquez v. County of Los Angeles,* 307 F.3d 884, 893 (9th Cir. 2002) (finding no hostile environment discrimination where the employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others); *Nielsen v. Trofholz Technologies, Inc*. (E.D. Cal. 2010) 750 F.Supp.2d

1157, 1169 (finding that defendant's verbal attacks and requirement that plaintiff work 30 days straight "certainly has not shown that the harassment was severe and pervasive.").

24. In *Kortan v. Cal. Youth Auth.* (9th Cir. 2000) 217 F.3d 1104, 1111, the court found there was no hostile work environment where the supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on several occasions and directly called plaintiff "Medea." The court specified that "however offensive his language, [the conduct] was not severe or pervasive" enough to bring a hostile work environment claim. *Id.* (Specifying that the magnitude of conduct required for a hostile work environment claim is exemplified in *Montero v. AGCO Corp.,* (9th Cir. 1999) 192 F.3d 856, in which a plaintiff was subjected to crude gestures, supervisors grabbing their crotches while speaking to her, placing their faces on plaintiff's bottom, trying to bite her neck, etc.)

25. Given the court in *Manatt* and *Kortan*, concluded that repeated racial epithets over two-and-a-half-years and directly calling a plaintiff and others derogatory terms does not rise to the level of "severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive work environment," then the facts alleged in Nieto's complaint against Quintanilla and Ruben certainly do not rise to such level. Instead, Nieto's alleged injury consists of nothing more than personnel decisions and conclusory statements with minimal, if any, supporting factual allegations. *See* Gelpi., ¶ 2, **Exhibit A**, Compl. ¶ 16-17. To that end, Plaintiff's only supporting allegations are that he "was pressured to keep up the same production level," "accused [] of making up excuses to avoid working," "stared [at] aggressively," and "micromanaged." *Id.* Even if true, which Defendant denies, these allegations by Nieto are insufficient to establish the existence of a hostile work environment.

26. Finally, personnel management actions, including "hiring and firing, job or project assignments, office or work station assignments, promotion or

demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions" and decisions regarding meetings fall outside the purview of harassment. *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 65. *McKenna v. Permanente Medical Group, Inc.*, (E.D. Cal. 2012) 894 F.Supp.2d 1258, 1280 ("[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job.") (citing *Reno v. Baird*, (1998) 18 Cal. 4th 640, 646–647). Accordingly, the alleged "harassing" personnel management actions cited by Nieto, including Quintanilla allegedly pressuring Plaintiff to keep up the same production level and Ruben allegedly micromanaging Plaintiff, are personnel management actions that cannot support a hostile work environment claim.

27. Because Nieto cannot allege any valid claims as a matter of law against Quintanilla and Ruben, both are "sham" defendants and need not be considered by the Court when determining whether complete diversity exists in this case. *Hamilton Materials, Inc., v. Dow Chem. Corp*. (9th Cir. 2007) 494 F.3d 1203, 1206 ("[i]f plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent.")

28. Although all defendants to an action normally must consent to removal, the consent of fraudulently joined parties is not required for removal of an action from state to federal court. *Emrich v. Touche Ross & Co.* (9th Cir. 1988) 846 F.2d 1190, 1193 n.1 (citing *Hewitt v. City of Stanton* (9th Cir. 1986) 798 F.2d 1230, 1233). Because Quintanilla and Ruben were fraudulently joined, their consent to removal is not required.

29. Based on the foregoing, diversity of citizenship exists between Nieto and HD Supply and this case must be removed to this Court.

### C. The Amount in Controversy Requirement Is Satisfied.

30. Diversity jurisdiction exists where the parties are diverse of citizenship and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. §1332(a).

31. The $75,000 threshold necessary for diversity jurisdiction is not particularly burdensome. In fact, when seeking removal of a state action to federal court based on diversity jurisdiction, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014). The failure of the Complaint to specify the total amount of damages or other monetary relief sought by Plaintiff does not deprive this Court of jurisdiction. *See, e.g., Saulic v. Symantec Corp.*, No. SA-CV-07-610-AHS(PLAx), 2007 WL 5074883, *5 (C.D. Cal. Dec. 26, 2007) (denying Plaintiff's motion to remand); *Parker-Williams v. Charles Tini & Associates, Inc.*, 53 F.Supp.3d 149, 152 (D.D.C. 2014) (holding the amount in controversy requirements was satisfied). A defendant need only to establish by a preponderance of evidence that the claims exceed the jurisdictional minimum. *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 982 (9th Cir. 2013); *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018). "The amount in controversy may include damages (compensatory, punitive, or otherwise) . . . as well as attorneys' fees awarded under fee shifting statutes." *Id.* (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648–49 (9th Cir. 2016)). "In assessing the amount in controversy, [the Court] may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy." *Chavez*, 888 F.3d at 416.

32. While HD Supply adamantly denies Nieto's allegations, denies any

liability, and denies Nieto has suffered any damages, based upon the allegations contained in the Complaint, the amount of controversy in this action exceeds $75,000, exclusive of interest and costs.  For purposes of determining the amount in controversy, the Court must assume that the allegations in the Complaint are true and assume that a jury will return a verdict for Plaintiff on all claims made in the Complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  Moreover, the amount in controversy can be determined from the Complaint or from other sources, including statements made in the notice of removal.  *See Kanter*, *supra*, 265 F.3d at 857 (9th Cir. 2001) (examining complaint and notice of removal for citizenship determination); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); ("[W]e reiterate that the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839-40 & n.2 (9th Cir. 2002) (considering settlement demand letter for purposes of determining amount in controversy).

33.  In the instant case, Nieto alleges eleven causes of action seeking recovery of consequential damages; general damages; preliminary and permanent injunction; reasonable costs, including attorneys' fees; a penalty; injunctive relief; disgorgement of profits; and punitive and exemplary damages.  Gelpi., ¶ 2, **Exhibit A**, Prayer ¶ 1-10.

34.  Plaintiff's Complaint identifies the amount in controversy in this action as follows: (a) consequential damages "in an amount not less than $87,360.00;" (b) general damages "in an amount not less than $150,000.00;" and (c) a penalty "in the sum of $750.00." *Id*. ¶¶ 1-6 (emphasis added).  Thus, the Complaint seeks $238,110.00 in consequential damages, general damages, and a penalty. *Id.*

35.  In addition to the $238,110.00 expressly sought in the Complaint, Plaintiff also seeks to recover an unspecified amount in attorneys' fees. *Id.* ¶¶ 4-5.

In the language of another court, "[w]hen attorney fees are added into the equation," the conclusion that more than $75,000 is in controversy "becomes irresistible." *Parker-Williams*, *supra*, 53 F.Supp.3d at 153.  This conclusion is only further supported by the fact that in the Ninth Circuit, district courts have the discretion to calculate fee awards using either the lodestar method or the "percentage-of-the-fund" method. *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (citations omitted).  As such, even where "the Court lacks the information required to calculate [attorneys'] fees, it is difficult to believe that the amount in controversy [] could be lower than $75,000 when the [attorneys'] fees are factored in along with" other available damages. *Parker-Williams*, *supra*, 53 F.Supp.3d at p. 152.  Simply put, it is more than likely that Plaintiff's attorney's fees, alone, will exceed $75,000 if this matter goes to trial.

36.  In sum, the evidence in the Complaint itself is sufficient to establish that Nieto has placed in controversy an amount exceeding the jurisdictional minimum amount of $75,000.00, exclusive of costs and interest.  Accordingly, the State Lawsuit may be removed to the United States District Court for the Central District of California because, at the time this action was filed and at the present time, diversity jurisdiction exists.

## V.   PROCEDURAL PREREQUISITES

37.  Pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), the United States District Court for the Central District of California is the appropriate court to which to remove this action from the Los Angeles Superior Court, where the action was filed.

38.  As required by 28 U.S.C. § 1446(d), a written notice of this Notice of Removal in the United States District Court for the Central District of California will be served on Nieto's counsel of record, Lipeles Law Group, APC.  A copy of the Notice to Adverse Party of Removal of Action to Federal Court is attached to the Declaration of Christopher A. Gelpi as **Exhibit D**.  In addition, a copy of this

Notice of Removal will be filed with the Clerk of the Court in the Superior Court for the State of California, County of Los Angeles.

39. Pursuant to 28 U.S.C. § 1446 (b)(2)(A)-(C), all defendants who have been joined and served in this matter consent to removal and join in this Notice of Removal.

40. This notice is executed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

41. In filing this notice, HD Supply does not waive any defenses.

42. In filing this notice, HD Supply does not admit any of the allegations made in Nieto's State Lawsuit.

## VI. CONCLUSION

43. Based on the foregoing, HD supply prays that the above-described action pending in the Superior Court of California, County of Los Angeles be removed to the United States District Court for the Central District of California.

DATE: October 15, 2021                    FISHER & PHILLIPS LLP

By: */s/ Todd B. Scherwin*

Todd B. Scherwin
Christopher A. Gelpi
Taylor R. Platt
Attorneys for Defendant
HD SUPPLY MANAGEMENT, INC.

# PROOF OF SERVICE
(CCP §§1013(a) and 2015.5)

I, the undersigned, am at least 18 years old and not a party to this action. I am employed in the County of Los Angeles with the law offices of Fisher & Phillips LLP and its business address is 444 South Flower Street, Suite 1500, Los Angeles, California 90071.

On October 15, 2021, I served the following document(s) **DEFENDANT HD SUPPLY MANAGEMENT, INC.'S NOTICE AND PETITION OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(A), 1441, AND 1446** on the person(s) listed below by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Kevin A. Lipeles<br>Thomas H. Schelly<br>Lipeles Law Group, APC<br>880 Apollo Street, Suite 336<br>El Segundo, CA 90245 | *Attorney for Plaintiff*<br>NABOR CERVANTES NIETO<br><br>Tel: (310) 322-2211<br>Fax: (310) 322-2252<br>Email: kevin@kallaw.com<br>thomas@kallaw.com |

☒ **[by MAIL]** - I enclosed the document(s) in a sealed envelope or package addressed to the person(s) whose address(es) are listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles California, in a sealed envelope with postage fully prepaid.

☒ **[by ELECTRONIC SERVICE]** - Based on a court order or an agreement of the parties to accept service by electronic transmission, I electronically served the document(s) to the person(s) at the electronic service address(es) listed above.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed October 15, 2021, at Los Angeles, California.

Amy Stark                                   By: */s/ Amy Stark*
Print Name                                              Signature

PROOF OF SERVICE

FP 41954927.1